# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### CASE NO. _____

|  |  |  |
|---|---|---|
| PABLO ESPIN, NICHOLAS PADAO, JEREMY BELL, and KEITH TAYLOR, *on behalf of themselves and others similarly situated*, | ) ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | **COMPLAINT—CLASS ACTION** |
| v. | ) |  |
|  | ) | **JURY TRIAL DEMANDED** |
| CITIBANK, N.A., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) ) ) |  |

Plaintiffs Pablo Espin, Nicholas Padao, Jeremy Bell, and Keith Taylor, individually and on behalf of a class of similarly situated persons, hereby file this Class Action Complaint, making the allegations herein upon personal knowledge as to themselves and their own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

## INTRODUCTION

1.    Since the beginning of the Iraq War through the present, members of our military services have been asked to make many sacrifices for our nation. One of these sacrifices is financial: leaving family, friends, and the comforts of civilian life to answer our country's call to duty also requires leaving behind employment, a career, and financial security. The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.* (formerly 50 U.S.C. App. §§ 501 *et seq.*), was enacted to address this sacrifice, and seeks "to enable [servicemembers] to devote their entire energy to defense needs of the Nation." 50 U.S.C. § 3902(1). The SCRA

guarantees that all debts incurred by a servicemember before being called to active duty are reduced to a 6% interest rate, from the date deployment orders are received through the ensuing active-duty period, as required by 50 U.S.C. § 3937. The Act also requires financial institutions to permanently forgive interest above 6%.

2.       Defendant Citibank, N.A. ("Citibank") markets heavily to servicemembers as a bank dedicated to military members, veterans, and their families. To attract and retain this business, Citibank promises contractual benefits that are more generous than required by the SCRA, including a 0% interest rate during active duty and for up to a year after active duty.

3.       Citibank breached its duties to servicemembers and veterans in numerous ways:

4.       First, Citibank systematically deprives eligible servicemembers of SCRA benefits. Even after eligible servicemembers requested SCRA benefits and provided sufficient documentation to qualify for benefits, Citibank denied benefits under the guise of needing additional documentation. Servicemembers entering active duty, already faced with intensive stress and time pressure, often are unable to overcome these additional obstacles, resulting in their denial of SCRA benefits and payment of excess interest and fees.

5.       When Citibank does provide a reduced interest rates to servicemembers, those benefits are often illusory. Rather than permanently forgiving the interest and fees, Citibank retroactively takes back this benefit by imposing an interest rate penalty on servicemembers after they leave active duty and return to civilian life.

6.       This "veteran penalty" is carried out by Citibank imposing certain interest and fee increases *only on returning servicemembers*.  No other customers are subject to these interest and fee penalties. By imposing this veteran penalty only on SCRA recipients, and not on any other customer, Citibank creates the illusion of SCRA compliance without actually lifting

2

servicemembers' financial burden as the SCRA requires. Citibank's promise to be more generous than the SCRA – by providing a 0% interest rate and no fees – is also made false by the veteran penalty.

7. The imposition of the veteran penalty is not only a violation of the SCRA and a breach of contract, it violates federal law specifically designed to prevent banks from creating such debt traps. The veteran penalty is carried out by Citibank illegally increasing interest and fees on outstanding balances. This is an unfair and deceptive practice which has been outlawed in our Nation since 2009, when Congress passed the Credit CARD Act of 2009.

8. Citibank's practice undermines our nation's commitment to servicemembers and veterans. When veterans return from active duty, they must rebuild their lives often without employment, and are uniquely vulnerable to Citibank's veteran penalty. By raising rates on veterans' outstanding balances – from 0% to as high as 26% – Citibank places our Nation's heroes into a debt trap. These veterans are already subject to intense emotional, familial, and financial stress, and Citibank's veteran penalty illegally and immorally forces veterans into immediate financial stress. It violates the very purpose of the SCRA's forgiveness requirement, which is to prevent veterans from experiencing financial distress upon their return from active duty.

9. The named plaintiffs in this action represented and protected our nation through military service. They now seek to represent and protect their fellow servicemembers and veterans through this class action.

## JURISDICTION AND VENUE

10. Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because this action arises, in part, under the laws of the United States, including the Servicemembers Civil

3

Relief Act ("SCRA"), 50 U.S.C. § 4042(a), and the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("the Credit CARD Act"), 15 U.S.C. §§ 1601 *et seq*.

11. In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and (6) because the aggregate claims of the proposed class members exceed $5,000,000, and at least one named plaintiff resides in a different state than Citibank. The amount in controversy in this matter includes, but is not limited to, actual and consequential monetary damages, disgorgement of Citibank's ill-gotten gains, punitive damages, civil penalties, and attorneys' fees and costs.

12. This Court has personal jurisdiction over Citibank, as it conducts business activities which are the subject of the present complaint in North Carolina.

13. Venue is proper in this Court, as one of the named plaintiffs resides in this district, Citibank conducts business within the district, and many of the business activities, events, and/or wrongdoing giving rise to the claims asserted in this Complaint occurred therein. Maintaining the venue of this class action in this district is therefore proper under 28 U.S.C. § 1391.

## **PARTIES**

14. Plaintiffs file this Complaint in their individual capacity, and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the class identified below.

15. Plaintiffs had one or more interest-bearing obligations to Citibank that qualified for and legally required reduced interest and/or fees benefits from Citibank because of an obligor's military service.

16.     Defendant Citibank, N.A., is a national banking association within the meaning of 12 U.S.C. § 1813(q)(1)(A). Citibank is incorporated in South Dakota with a principal place of business in New York, and may be served with process through its registered agent, CT Corporation System, 160 Mine Lake Ct., Ste 200, Raleigh, North Carolina, 27615.

17.     Citibank does substantial business in the State of North Carolina with a corporate office, employees, and customers located in North Carolina. Citibank maintains minimum contacts with the State of North Carolina to satisfy the due process clause of the United States Constitution and has sufficient minimum contacts with the State of North Carolina such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.

## CLASS ACTION ALLEGATIONS

**Class Definition**

18.     In accordance with Federal Rule of Civil Procedure 23, Plaintiffs bring this action in their individual capacity and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the following class:

> **National Military Class:** All persons who requested and/or received reduced interest and/or fee benefits from Citibank on an interest-bearing obligation because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

19.     This class action satisfies the requirements of Federal Rule of Civil Procedure 23, including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

**Impracticable Joinder**

20.     The proposed class is composed of tens of thousands of persons, geographically dispersed throughout the United States and serving the country overseas, the joinder of whom in one action is impracticable. The disposition of their claims in a class action will provide substantial benefits to both parties and the Court. Citibank, either directly or through affiliated entities, is in possession of the names and addresses of all class members.

21.     Class treatment is particularly appropriate here because Citibank conducts business in every jurisdiction in the United States. Further, this matter involves multiple federal statutes which Citibank extensively and harmfully misapplied and violated.

**Risk of Inconsistent or Varying Adjudications**

22.     Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for Citibank.

23.     Further, the outcomes of separate actions by individual members of the class could, as a practical matter, be potentially dispositive of the interests of other members of the class and substantially impair or impede their ability to protect their interests. Class-wide adjudication of Plaintiffs' claims, therefore, is appropriate.

24.     Citibank has acted on grounds generally applicable to the class, thereby making class-wide adjudication of these claims appropriate.

**Common Questions of Law and Fact**

25.     There exists a well-defined community of interests and questions common to the class, which predominate over individual factual or legal questions. These common factual and legal questions include, but are not limited to:

        (a)     Whether Citibank violated the SCRA by failing to grant SCRA benefits to qualifying servicemembers;

(b) Whether Citibank violated the SCRA by imposing a "veteran penalty" on recipients of SCRA benefits upon their leaving active duty, thereby taking back the SCRA benefits and failing to permanently forgive interest above 6%;

(c) Whether Citibank's contractual military benefits program ("Military Benefits Program,") as described herein, constituted an enforceable contract term or a separately enforceable contract between Citibank and class members, and whether Citibank's violations of the terms of its program gives rise to liability for breach of contract;

(d) Whether Citibank's practices violated the Truth in Lending Act ("TILA"), including but not limited to violations of the Credit CARD Act of 2009;

(e) Whether Citibank knew, reasonably should have known, or recklessly disregarded that its acts and practices were unlawful;

(f) Whether Plaintiffs and the class are entitled to statutory, actual, consequential, and/or punitive damages;

(g) Whether Plaintiffs and the class are entitled to an accounting;

(h) Whether Citibank owed fiduciary or special duties to Plaintiffs and the class and whether they breached such duties; and

(i) Whether Plaintiffs and the class are entitled to recovery of attorney's fees and costs.

**Typicality**

26. The individual Plaintiffs and the class representatives to be named are asserting claims that are typical of the claims of the entire class, and the class representatives will fairly and adequately represent and protect the interests of the class in that they have no interests antagonistic to those of the other members of the class.

**Fair and Adequate Representation**

27.     The individual Plaintiffs have retained counsel who are competent and experienced in the handling of litigation, including class action litigation, and who will fairly and adequately represent and protect the interests of the class. Likewise, the class representatives will fairly and adequately represent and protect the interests of the class as a whole.

**Superiority of Class Action Procedure**

28.     The individual Plaintiffs and other class members have all suffered damages as a result of Citibank's unlawful and wrongful conduct. Absent a class action, Citibank will likely retain a substantial unlawful gain, its conduct will go un-remedied and uncorrected, and the class members will likely be deprived of adequate relief. Class action treatment of these claims is superior to handling the claims in other ways.

29.     Certification of the class is appropriate under Federal Rule of Civil Procedure 23.

## STATEMENT OF FACTS

**Plaintiff Captain Pablo Espin:**

30.     Plaintiff Captain Pablo Espin resides in Spring Lake, North Carolina. He has served our Nation since 2010, including service in the Air Force and Army, and on deployment to Afghanistan and Qatar.

31.     Captain Espin currently receives benefits from Citibank under the SCRA and the Military Benefits Program.

32.     Captain Espin carries a significant balance on his Citibank credit card, which is currently subject to a 0% interest rate. He now recognizes that as soon as he leaves active duty, Citibank will impose its veteran penalty by raising the interest rate and fees on this outstanding

balance. This would force him to incur substantial additional interest and likely place him into financial crisis. He therefore seeks declaratory and injunctive relief to prevent this harm.

**Plaintiff Nicholas Padao:**

33.     Plaintiff Nicholas Padao resides in Champaign, Illinois.  He served our Nation since 2003, including service in the Army National Guard and a deployment to Iraq in 2018-2019, and recently retired.

34.     Mr. Padao had his Citibank credit card before entering active duty in 2018.

35.     Mr. Padao notified Citibank that he was deploying to Iraq in November 2018, and requested military benefits. Mr. Padao sent his activation orders and then had several calls with Citibank seeking military benefits. While other banks provided Mr. Padao SCRA benefits for his 2018 deployment based on this information, Citibank did not.

36.     On November 1, 2018, Citibank's Military Response Unit sent Mr. Padao a letter requesting additional information, such as a commander's letter. He had already provided his orders, so he interpreted this letter as requiring additional information.  Citibank provided only a fax number, not an email address, for Mr. Padao to transmit this additional information.  Given his deployment, Mr. Padao could not jump through these hoops and never received SCRA benefits.

37.     Citibank failed to reduce Mr. Padao's interest rate and waive fees as required by the SCRA and/or its Military Benefits Program.

38.     Mr. Padao paid more in interest charges and fees on accounts with Citibank than should have been due under a correct application of the SCRA and/or the Military Benefits Program.

**Plaintiff Sergeant Jeremy Bell:**

39.     Plaintiff Sergeant Jeremy Bell resides in Georgia. He has served our country since 2009 and is currently a Sergeant First Class in the Army.

40.     Citibank accepted Sergeant Bell into its Military Benefits Program for his Home Depot (Citibank) credit card. When Citibank terminated Sergeant Bell from its Military Benefits Program, Sergeant Bell had a balance of over $10,000 on his card. Citibank raised the interest rate on that outstanding balance from 0% to 25.99%. Citibank never sent notice that rates would increase in this manner.

41.     In his last month in the Military Benefits Program, Sergeant Bell had over $10,000 on his credit card, but his periodic statement showed the following balances and applicable interest rates:

| INTEREST CHARGE CALCULATION | | Your Annual Percentage Rate (APR) is the annual interest rate on your account. | |
| --- | --- | --- | --- |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| PURCHASES | | | |
| Revolving Balance | 0.00% (M) | $0.00 | $0.00 |
| NO INT FOR 6MOS-PMT REQ | 0.00% (M) | $0.00 | $0.00 |

42.     The following month, Citibank applied the veteran penalty and increased the interest rate on Sergeant Bell's outstanding balances, shown on his periodic statement as follows:

| INTEREST CHARGE CALCULATION | | Your Annual Percentage Rate (APR) is the annual interest rate on your account | |
| --- | --- | --- | --- |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| PURCHASES | | | |
| Revolving Balance | 25.99% (M) | $10,702.16 | $228.60 |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |
| NO INT FOR 6MOS-PMT REQ | 25.99% (M) | - | - |

43.     Prior to his active duty, Citibank did not send Sergeant Bell notice, in a clear and conspicuous manner, that his interest rate on outstanding balances incurred at 0% would increase to 25.99%, or when precisely that would occur.  The only notice provided was embedded in what

looked like a perfunctory confirmation of SCRA coverage, and it was insufficient as it did not contain this information.

44. Sergeant Bell found himself in a debt trap, barely able to make the minimum payments on his card and with no way in sight to pay it off. This created an immediate financial crisis for him and his family. He was forced to use his Home Depot card to buy gift cards, just to buy food to feed his family. He was effectively forced to borrow from Citibank (at 25.99%) just to buy groceries.

45. While Sergeant Bell knew that these charges were unfair, he had no choice but to pay his bills. Sergeant Bell is an intelligence analyst and the failure to timely pay his bills would have jeopardized his security clearance and his Army career.

46. The increased interest rates had a cascading impact on Sergeant Bell's financial situation. Citibank and other banks saw him as a higher risk customer because he was making only minimum payments on a card with such a high interest rate, and sometimes unable to make minimum payments, causing them to lower his credit limit and harming his credit score.

**Plaintiff Keith Taylor**

47. Plaintiff Keith Taylor served our country since 1994 including service as a Lieutenant and multiple deployments including to Iraq and Afghanistan.

48. Citibank accepted Mr. Taylor into its Military Benefits Program for his Citibank credit card. After Mr. Taylor left active duty, he had significant debt on his card. Citibank imposed the veteran penalty on Mr. Taylor by raising the interest rate on his outstanding balance from 0% to 15.74%.

49.     In his last month in the Military Benefits Program, Mr. Taylor had a balance of over $5,000 on his card, but his periodic statement showed the following balances and applicable interest rates:

| Interest charge calculation | | Days in billing cycle: 28 | |
| --- | --- | --- | --- |
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
| PURCHASES | | | |
| Standard Purch | 15.49% (V) | $0.00 (D) | $0.00 |
| ADVANCES | | | |
| Standard Adv | 26.49% (V) | $0.00 (D) | $0.00 |

50.     The following month, Citibank applied the veteran penalty and increased the interest rate on his outstanding balances, shown on his periodic statement as follows:

| Interest charge calculation | | Days in billing cycle: 30 | |
| --- | --- | --- | --- |
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
| PURCHASES | | | |
| Standard Purch | 15.74% (V) | $5,421.45 (D) | $70.13 |
| ADVANCES | | | |
| Standard Adv | 26.74% (V) | $0.00 (D) | $0.00 |

51.     Prior to his active duty, Citibank did not send Mr. Taylor notice, in a clear and conspicuous manner, that his interest rate on outstanding balances incurred at 0% would increase to 15.74% in April 2018. The only notice provided to Mr. Taylor was embedded in what looked like a perfunctory confirmation of SCRA coverage, and it was insufficient as it did not contain this information.

52.     Citibank's violations of law and breach of contract forced Mr. Taylor to pay additional interest and fees.

**General Allegations**

53.     Citibank has systematically violated the SCRA in numerous ways.

54.     First, Citibank systematically deprived eligible servicemembers of SCRA benefits. Even after eligible servicemembers requested SCRA benefits and provided sufficient documentation to qualify for benefits, Citibank denied benefits under the guise of needing additional documentation. Servicemembers entering active duty, already faced with intensive stress and time pressure, often are unable to overcome these additional obstacles, resulting in their denial of SCRA benefits and payment of excess interest and fees.

55.     Citibank has systematically denied SCRA benefits to qualified servicemembers by applying uniform procedures which made it difficult or impossible for qualified servicemembers to obtain SCRA benefits.

56.     Citibank regularly accesses the Defense Manpower Database Center ("DMDC") to verify the service status of customers, including when it is deciding when to terminate SCRA benefits.

57.     On information and belief, Citibank has made a business decision to selectively utilize the DMDC to verify the active duty status of servicemembers requesting SCRA benefits, but still using the SCRA's documentation requirement as a roadblock to SCRA eligibility.

58.     On information and belief, Citibank routinely denies SCRA benefits to qualified servicemembers, including servicemembers the DMDC showed qualified for SCRA benefits.

59.     On information and belief, Citibank has conducted internal audits and found that it has denied SCRA benefits to qualified servicemembers.

60.     Second, when Citibank does provide a reduced interest rate pursuant to the SCRA and its military benefits program, those benefits are often illusory. Rather than permanently

forgiving the interest and fees, Citibank retroactively takes back this benefit by imposing an interest rate penalty on servicemembers after they leave active duty and return to civilian life.

61. This "veteran penalty" is carried out by Citibank imposing certain interest and fee increases *only on returning servicemembers*. No other customers are subject to these interest and fee penalties. By imposing this veteran penalty only on SCRA recipients, and not on any other customer, Citibank creates the illusion of SCRA compliance without actually lifting servicemembers' financial burden as the SCRA requires.

62. Citibank's promise to be more generous than the SCRA – by providing a 0% interest rate and no fees – is also made false by the veteran penalty. Through the veteran penalty, Citibank takes back the contractual benefits it has promised.

63. When Citibank terminates a customer's military benefits, Citibank raises the interest rate and fees on any outstanding balances on the servicemember's credit card.

64. When Citibank terminates a customer's military benefits, Citibank raises the interest rate and fees on all outstanding balances on the servicemember's credit card, whether the debt was incurred before, during, or after active duty.

65. Citibank does not increase interest rates on other non-military customers' outstanding balances. This type of interest rate increase (increasing interest rates on outstanding balances) is imposed only on customers whose SCRA benefits are terminating, who are typically veterans.

66. By increasing interest rates on veterans' and servicemembers' outstanding balances, Citibank recoups part of the cost of providing interest rate benefits to servicemembers under the SCRA and Military Benefits Program.

67.     The veteran penalty is carried out by Citibank increasing interest and fees on outstanding balances. This is an unfair and deceptive practice which has been outlawed in our nation since 2009, when Congress passed the Credit CARD Act of 2009.

68.     When a servicemember is enrolled into the Military Benefits Program, Citibank sends them a form letter confirming their SCRA coverage and informing the servicemember of the benefits they will receive under the Military Benefits Program.

69.     When Citibank confirms SCRA benefits, Citibank does not disclose the length of the benefit period or the annual percentage rate that would apply after the expiration of the period.

70.     Citibank's letters confirming enrollment in the Military Benefits Program are sent at a time when the servicemembers are going onto or are already on active duty, so many servicemembers do not have the capacity to focus on those letters or may not receive them at all.

71.     Citibank did not and does not disclose to Plaintiffs and class members the length of the period of interest rate reduction or the interest rate that will apply after that period, prior to the commencement of SCRA and Military Benefits Program interest rate reductions.

72.     The terms of Citibank's Military Benefits Program included certain benefits that Citibank considered to be more generous than those required by the SCRA. Those terms evolved over time but were uniform across customers at any given point in time.

73.     The terms of the Military Benefits Program were well documented and systematically communicated to class members; they became terms of the agreements between the parties and therefore became enforceable in contract.

74.     Plaintiffs and other class members relied on Citibank's representations regarding the Military Benefits Program when deciding to maintain their accounts with Citibank and to incur more debts on those accounts. If Citibank had failed to provide this competitive program, Plaintiffs

and other class members would have refrained from incurring additional debt with Citibank and/or closed their accounts with Citibank and moved to another bank.

75. Citibank's Military Benefits Program provides servicemembers with a 0% interest rate on all balances on their credit cards, whether the debt was incurred before active duty, during active duty, or during a defined period after active duty ("extended benefit period").

76. Citibank's Military Benefits Program provides a 0% interest rate for one year after the servicemember leaves active duty.

77. Citibank sometimes applies the 0% interest rate for more than a year after a servicemember leaves active duty.

78. Citibank offered the Military Benefits Program and its associated benefits to appear competitive in the consumer banking market and to retain the business of servicemembers.

79. On information and belief, Citibank established the 0% interest rate as part of its Military Benefits Program to be competitive with other banks.

80. On information and belief, Citibank established the year-long extended benefit period as part of its Military Benefits Program to be competitive with other banks.

81. On information and belief, Citibank waives fees as part of its Military Benefits Program to be competitive with other banks.

82. The SCRA does not require Citibank to provide a 0% interest rate as part of its Military Benefits Program.

83. The SCRA does not require Citibank to lower interest rates or waive fees for balances incurred during active duty.

84. The SCRA does not require Citibank to provide benefits after the end of active duty as part of its Military Benefits Program.

85.     The SCRA does not require Citibank to waive all fees as part of its Military Benefits Program.

## ALLEGATIONS AS TO DISCOVERY

86.     Some if not all the violations and breaches described herein remain ongoing. Citibank's violations of the SCRA and the Credit Card Act resulted in improper inflation of the principal balances owed by Plaintiffs and class members, and subsequent monthly interest being charged on these inflated balances. Thus, each and every month in which Citibank overcharged interest or fees on servicemembers' accounts constituted an ongoing violation of, *inter alia*, the SCRA and TILA.

87.     Each month, Citibank sent incorrect periodic statements to Plaintiffs and class members, including by misstating applicable and applied interest rates and/or their duration, constituting an ongoing violation of laws and regulations.

88.     The policies behind the SCRA, and the facts described herein, require an equitable tolling of any statute of limitations. Citibank should not be allowed to retain their ill-gotten gains resulting from such improper activity.

## FIRST CAUSE OF ACTION
### (Violation of the Servicemembers Civil Relief Act)

89.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

90.     Plaintiffs, on behalf of themselves and the class, have a private right of action for violations of the SCRA pursuant to 50 U.S.C. § 4042.

91.     The SCRA, formerly known as the War and National Defense Soldiers' and Sailors' Civil Relief Act of 1940, guarantees that all debts incurred by a servicemember or servicemember reservist before being called to active duty will be reduced to an interest rate of 6% from the date

of their orders, and during the ensuing active-duty period as required by 50 U.S.C. § 3937. Several classes of fees and charges qualify as interest. Any interest above the 6% must be permanently forgiven and cannot be deferred.

92. Citibank violated the SCRA by failing to properly apply its provisions to the accounts and outstanding debt of Plaintiffs and other class members.

93. Citibank purported to reduce interest rates in compliance with the SCRA, but then took back those benefits by imposing interest and fee increases *only upon* SCRA recipients leaving active duty.

94. Through this "veteran penalty," Citibank recouped some or all of the interest rate reduction that was provided under the SCRA. This violated 50 U.S.C. § 3937(a)(2) ("Interest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in paragraph (1) is forgiven.").

95. Citibank also violates the SCRA by requiring servicemembers to jump through illegal hoops to obtain SCRA benefits. The SCRA allows servicemembers flexibility in proving active-duty status and thereby qualifying for the interest rate benefit:

> Not later than 180 days after the date of a servicemember's termination or release from military service, in order for an obligation or liability of the servicemember to be subject to the interest rate limitation in subsection (a), the servicemember shall provide to the creditor written notice and a copy of—
> > (i) the military orders calling the servicemember to military service and any orders further extending military service; or
> > (ii) any other appropriate indicator of military service, including a certified letter from a commanding officer.

50 U.S.C. § 3937(b)(1)(a). Citibank violates this requirement by imposing onerous documentation requirements and denying benefits based upon documentation that satisfies 50 U.S.C. § 3937(b)(1)(a).

96.     Even after Plaintiff Nicholas Padao requested SCRA benefits and submitted orders – thereby meeting the documentation requirements of the SCRA – Citibank sent him a form letter requesting further documentation, such as a letter from a commanding officer.  On information and belief, this is a common practice. Sending this form letter to servicemembers who already qualify for benefits misleads servicemembers about the SCRA's requirements and discourages them from taking advantage of their legal rights under the SCRA.

97.     Citibank requires that proof of SCRA eligibility be submitted by fax or mail, requiring the servicemember to obtain fax and copying services to request SCRA benefits. This can create an insurmountable barrier for a servicemember called to active duty. This requirement stands in contrast to Citibank's regular banking practices, which allow virtually all other banking transactions to occur electronically through email, Citibank's app, and/or its website.

98.     Citibank's request for documentation from servicemembers is not prompt, and this delay creates another illegal barrier to benefits, since a servicemember on active duty or deployed cannot be expected to provide this further documentation.

99.     Finally, Citibank violates the SCRA in denying SCRA benefits for lack of documentation because servicemembers are entitled to benefits if the lender utilizes the DMDC to verify active-duty status. "A creditor may use, in lieu of notice and documentation under subparagraph (A), information retrieved from the Defense Manpower Data Center through the creditor's normal business reviews of such Center for purposes of obtaining information indicating that the servicemember is on active duty." 50 USC 3937 (b)(1)(b). Once a bank has routinized a process of confirming active-duty status through the DMDC, as Citibank has, it must provide SCRA benefits to servicemembers whose active-duty status is verifiable through the DMDC, "in lieu of notice and documentation" provided by the servicemember. *Id*.

100.    The SCRA protects the rights of servicemembers to bring a class action to enforce rights under the SCRA. To the extent that Citibank seeks to interfere with servicemembers' rights to bring a class action, Citibank is in violation of the SCRA.

101.    Citibank was aware of the provisions and requirements of the SCRA. Citibank either knew, reasonably should have known, and/or recklessly disregarded its failure to comply with the SCRA and the exploitative and deceptive nature of its policies, procedures, and decisions.

102.    Plaintiffs incurred damages as a direct and proximate result of Citibank's violations of the SCRA. For one or more Plaintiffs and many class members, this harm is ongoing. As a result, Plaintiffs and the class members seek relief.

## SECOND CAUSE OF ACTION
### (Violation of Military Lending Act)

103.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

104.    Plaintiffs have a private right of action for violations of the Military Lending Act "MLA" pursuant to 32 C.F.R. 232.9(e).

105.    The MLA's purpose "is to impose limitations on the cost and terms of certain extensions of credit to Service members and their dependents, and to provide additional protections relating to such transactions in accordance with 10 U.S.C. 987." 32 C.F.R. 232.1(b). The MLA protects servicemembers from unfair and predatory loan practices. The MLA also prohibits a bank from requiring a servicemember to agree to forced arbitration as a condition of extending credit. 10 U.S.C. § 987(e) ("It shall be unlawful for any creditor to extend consumer credit to a covered member or dependent of such a member with respect to which . . . the creditor requires a borrower to submit to arbitration . . ."). Citibank violates this provision to the extent that it seeks to force

arbitration about a dispute arising out of the extension of credit to servicemembers during active duty or to their dependents.

106.     Citibank's cardmember agreement misleads servicemembers and thereby violates the MLA's notice and disclosure requirements by telling servicemember that they are only entitled to MLA protections and exempt from forced arbitration if they were in the military when the account was opened. Citibank's cardmember agreement describes the protections under the MLA and then states, "You are entitled to these protections if you are a Covered Borrower, as defined below."  It then states, "You are a Covered Borrower if, *in connection with the opening of your account*, we determine you are an active duty member of the Armed Forces (including active Guard and Reserve duty) or a dependent of an active duty member." (emphasis added). However, the MLA's protections cover the extension of credit to "covered members," which is defined based upon active-duty status, *regardless of when the account was opened*. 10 U.S.C. § 987(e); (i)(1).

107.     Under federal law, credit is extended when a cardholder makes a purchase. *Am. Express Co. v. Koerner*, 452 U.S. 233, 240-41 (1981) ("[A] credit card company such as American Express extends credit to an individual or an organization when it opens or renews an account, as well as when the cardholder actually uses the credit card to make purchases. When the account is opened or renewed, the creditor has granted a right 'to incur debt and defer its payment'; when the card is used, the creditor has allowed the cardholder 'to defer payment of debt.'");  *accord Jones v. Citibank, N.A.*, 235 S.W.3d 333, 339 (Tex. App. 2007) ("Thus, by using the credit card that appellee issued to her, appellant entered into a binding contract with appellee under South Dakota law.").

108.     The extension of credit during the period of military service is indisputable in the context of this case, since Citibank specifically changes the terms of the credit card agreement

after servicemembers notify it of their active duty status, forming a new contract for credit. *See* SD Codified L § 54-11-10 ("Use of the card after the effective date of the change of terms is deemed to be an acceptance of the new terms").

109.    Citibank's interpretation of the MLA seeks to unilaterally exempt itself from the MLA, depriving most servicemembers and their dependents of their rights under the MLA (either by misleading them about their rights or by failing to honor those rights).

110.    Citibank was required to provide disclosures of certain MLA provisions. 10 U.S.C. § 987(c); 32 C.F.R. § 232.6(a)(1) (requiring disclosure of "the MAPR applicable to the extension of consumer credit"). By misrepresenting the scope of MLA protections, Citibank violated the disclosure requirement.

111.    Under the MLA, Plaintiffs and the other class members are entitled to (a) void the agreement and recover interest and fees paid thereunder; (b) actual damages, but not less than $500 for each violation; (c) punitive damages; (d) injunctive relief including corrective disclosures; and (e) attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**(Breach of Contract)**

112.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

113.    Citibank's conduct and communications informed Plaintiffs and class members of the terms of its Military Benefits Program, with an understanding that they would rely upon that program in managing their financial affairs while a servicemember was engaged in active military service. Citibank's Military Benefits Program was developed and offered to Plaintiffs and other similarly situated customers to maintain competitiveness in the banking industry and to retain the

business of servicemembers; Citibank knew that if its program was not competitive, servicemembers would move their business to another bank.

114.     The Military Benefits Program either constituted an enforceable term of Citibank's existing contracts with Plaintiffs and class members and/or constituted a separate enforceable contract with Plaintiffs and other class members.

115.     Plaintiffs and other class members maintained their accounts with Citibank and incurred additional debt on those accounts, to Citibank's benefit, in reliance on Citibank's Military Benefits Program and the purported benefits offered therein by Citibank, which were promised as competitive with those offered by other banks.

116.     The terms of Citibank's Military Benefits Program evolved over time but were always uniform across customers at any given point in time. For example, but not by way of limitation, Citibank promised to reduce servicemembers' interest rates to 0%.

117.     By increasing interest rates and not honoring its promises, Citibank violated the terms of the Military Benefits Program, and thereby breached its contracts with Plaintiffs and class members.

118.     The Military Benefits Program must be interpreted to be consistent with federal law, including the Credit CARD Act. The cardmember agreement also states that federal law governs the contract and its enforcement. Thus, when Citibank promised to extend credit at 0%, and waive fees, the contract prevented Citibank from raising the interest rates and fees on outstanding balances incurred at the 0% rate. Citibank breached the contract by later increasing the rates and fees on these outstanding balances and/or by recouping the interest rate benefit by imposing these later overcharges.  This constitute a separate breach of contract form the breaches described elsewhere.

119.    The cardmember agreement describes the calculation of interest as follows: "We multiply each daily balance by the daily periodic rate that applies to it . . . . This gives us the daily interest charges for each of your different balances." Instead, Citibank is breaching the contract by multiplying daily balances incurred at 0% by an inflated periodic rate rather than the 0% rate that applies to the balance.  This constitute a separate breach of contract form the breaches described elsewhere.

120.    Citibank breached the terms of the Military Benefits Program by imposing a veteran penalty on customers whose SCRA benefits had expired, thereby taking back the promised contractual benefit. This constitute a separate breach of contract form the breaches described elsewhere.

121.    Citibank charged Plaintiffs and class members more interest and fees than was permitted by the Military Benefits Program. Plaintiffs paid the improper interest charges and fees, and Citibank currently retains those payments.

122.    As a direct and proximate result of Citibank's breach of contract as described herein, Plaintiffs and class members have been damaged in an amount to be proven at trial.

## <u>FOURTH CAUSE OF ACTION</u>
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

123.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

124.    Citibank breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract, including by imposing a veteran penalty to take back part or all of the promised contractual benefit.

125.    Plaintiffs and class members had justified expectations that Citibank would provide them all statutory and contractual benefits, comply with all applicable federal and state statutes,

create and maintain a robust SCRA compliance program, and honestly and forthrightly provide them with information needed to understand and enforce their rights.

126.     Citibank breached its duty to Plaintiffs and class members by violating the SCRA and the Military Benefits Program, by imposing improper charges and fees, and through its misleading cardmember agreements.

127.     Citibank's breach of its duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

**FIFTH CAUSE OF ACTION**
**(Violation of Truth in Lending Act)**

128.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

129.     Pursuant to 15 U.S.C. § 1637(b), periodic statements provided by "[t]he creditor of any account under an open consumer credit plan" shall include, *inter alia*, each applicable interest rate and the range of balances to which it is applicable.

130.     Citibank's periodic statements violated this requirement, including by improperly stating the interest rate applicable to different balances and by failing to provide an accurate table of balances and applicable interest rates.

131.     Plaintiffs and class members paid improperly inflated amounts to Citibank in reliance on Citibank's improper periodic statements.

**SIXTH CAUSE OF ACTION**

**(Violation of Truth in Lending Act – Credit CARD Act of 2009)**

132.     The Credit CARD Act of 2009 prohibits card issuers from raising interest rates on existing balances, known as "protected balances." 15 U.S.C. § 1666i-1. The statute provides, "In the case of any credit card account under an open end consumer credit plan, no creditor may

increase any annual percentage rate, fee, or finance charge applicable to any outstanding balance, except as permitted under subsection (b)." *Id.* § 1666i-1(a). Rather, card issuers are required to separately track those protected balances and keep interest at the previous lower rate. *Id.* § 1666i-1(c). The card holder then has certain options for paying off the protected balances, such as amortizing the balance on a five-year schedule. *Id.*

133. The CARD Act contains four exceptions to the protected balances rule, none of which apply here. *Id.* § 1666i-1(b). Defendant cannot rely upon the exception for increases in interest rates upon the expiration of a specified period of time, because active duty is by its nature not for a specified period of time and does not generally have a specified end date. Defendant's program recognizes that the duration of its Military Benefits Program is not set and will be determined based upon the actual duration of active duty, which often changes over the course of active duty. Furthermore, this exception requires that "prior to the commencement of that period, the creditor disclosed to the consumer, in a clear and conspicuous manner, the length of the period and the annual percentage rate that would apply after the expiration of the period," *id.*, which Citibank does not do.

134. Any attempt by Citibank to rely upon the SCRA confirmation letters as a defense to the CARD Act claim or a waiver of rights constitutes a violation of its fiduciary duty.

135. The Federal Reserve has recognized that the "specified period of time" exception does not apply to active duty and SCRA benefits, stating, "Under revised TILA Section 171, a creditor that complies with the SCRA by lowering the annual percentage rate that applies to an existing balance on a credit card account when the consumer enters military service arguably would not be permitted to increase the rate for that balance once the period of military service ends

and the protections of the SCRA no longer apply." 12 C.F.R. Part 226, Regulation Z; Docket No. R-1370.

136.    In adopting the Regulation Z rules implementing the CARD Act, the Federal Reserve created an additional exception not contained in the statute. The rule provides:

> Servicemembers Civil Relief Act exception. If an annual percentage rate or a fee or charge . . . has been decreased pursuant to 50 U.S.C. app. 527 or a similar Federal or state statute or regulation, a card issuer may increase that annual percentage rate, fee, or charge once 50 U.S.C. app. 527 or the similar statute or regulation no longer applies, provided that the card issuer must not apply to any transactions that occurred prior to the decrease an annual percentage rate, fee, or charge that exceeds the annual percentage rate, fee, or charge that applied to those transactions prior to the decrease.

Regulation Z, § 1026.55(b)(6) (the "regulatory exemption"). In adopting the regulatory exemption, the Federal Reserve System Board of Governors made it clear that the exception only applies to rates or fees that have been reduced "by operation of the SCRA." Truth in Lending, 75 Fed. Reg. 7568, 7741 (Feb. 22, 2010).

137.    The regulatory exemption does not apply here because Citibank reduced its interest rate under its Military Benefits Program, which were established for business reasons, not "by operation of the SCRA." These additional benefits appear "more generous" than the SCRA, but in fact they provide a more dangerous debt trap to servicemembers and veterans.

138.    In the alternative, if the regulatory exemption were applicable, it should be declared illegal, null, and void, because the CARD Act does not permit such an exemption, and depriving veterans of protections from debt traps that are available to all other consumers is contrary to the SCRA, MLA, and TILA.

139.    Citibank violated the Credit CARD Act by increasing the interest rate on protected balances servicemembers incurred before, during, and after active duty, resulting in the imposition of unlawful fees and interest.

140. Citibank's violations of TILA directly and proximately caused damages to Plaintiffs and the class.

141. Plaintiffs and the class are entitled to actual damages, statutory damages, and other relief under TILA.

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty or Special Trust)

142. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

143. Citibank did not have a typical arms-length lender/borrower relationship with Plaintiffs and class members. In the unique facts of this case, Citibank took on a role of fiduciary to the Plaintiffs and the class. *Dykstra v. Page Holding Co.*, 2009 S.D. 38, ¶ 29, 766 N.W.2d 491, 497 ("The test for the existence of a fiduciary relationship between a banker and a debtor has three elements: 1) the borrower reposes faith, confidence and trust in the bank; 2) the borrower is in a position of inequality, dependence, weakness or lack of knowledge; and 3) the bank exercises dominion, control or influence over the borrower's affairs." (internal citations omitted)).

144. Alternatively, the unique relationship between Citibank and Plaintiffs and the class members gives rise to a special duty under South Dakota Law, which governs the contract. "In determining whether a duty exists, we examine whether 'a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.' . . . Duty is also based upon foreseeability." *First Am. Bank & Tr., N.A. v. Farmers State Bank*, 2008 S.D. 83, ¶ 16, 756 N.W.2d 19, 26 (2008) (internal citations omitted).

145. The facts giving rise to the fiduciary duty or special duty include but are not limited to the following:

- Citibank specifically markets to servicemembers, and particularly to those servicemembers being deployed overseas;

- Citibank volunteered advice to servicemembers and their families with the intent that Citibank would become their trusted advisor on financial and non-financial matters.

- Plaintiffs and class members provided Citibank with documentation of their military status, which typically included overseas deployment orders. Thus, Citibank solicited and received notice that Plaintiffs and class members would be deployed overseas or otherwise engaged in active duty and could not fully monitor their accounts or act in an arms-length manner with the Citibank during periods of active military service. Citibank also received such notice when Plaintiffs and class members charged certain on-base purchases in military engagement areas. Citibank knows that deployed customers are generally not able to attend to financial matters while deployed.

- The SCRA reflects a Congressional determination that servicemembers cannot and should not be required to protect their own financial interests while serving full time in the U.S. military. By offering SCRA benefits and specifically marketing "enhanced" benefits beyond what the SCRA provides, Citibank acknowledges this unequal relationship and takes on fiduciary duties.

- The nature of military service also places servicemembers at a disadvantage to the bank, unlike other customers. If a bank overcharges a servicemember, the servicemember does not, as a practical matter, have the same recourse as other customers. They must still pay their bills as if the bank's calculations were

correct. Otherwise, their failure to timely pay bills can lead them to lose security clearance and, in turn, their military position and employment. Citibank is well aware of this dynamic and thereby has undue influence over their servicemember customers.

- The members of the deployment subclass informed Citibank not just that they would be going on active duty, but that they were being deployed, placing Citibank on notice that these subclass members would have a particularly difficult time monitoring their accounts like a typical customer.

146. Citibank breached fiduciary duties owed to Plaintiffs and the class and/or the special duties, including by overcharging servicemembers and returning veterans. Any attempt by Citibank to rely upon notice provided to servicemembers after they were called to active duty constitutes a further breach of fiduciary duties. These breaches directly and proximately caused Plaintiffs to suffer damages entitling Plaintiffs and the class to an accounting, restitution, and other equitable remedies.

**EIGTH CAUSE OF ACTION**
**(Accounting)**

147. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

148. Plaintiffs are entitled to an accounting either because (1) Citibank breached fiduciary duties and/or or a special trust, or (2) the accounts that will determine the amounts that Citibank owes to Plaintiffs are possessed only by Citibank and are so complex that they warrant resolution through an accounting rather than traditional discovery procedures.

149. Accordingly, Plaintiffs and other class members are entitled to an accounting of all overcharges, and improper interest, fees, and charges, as well as all assets, funds, revenues, and profits received and retained by Citibank as a result of its improper actions, as described herein.

## NINTH CAUSE OF ACTION
### (Constructive Trust)

150. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

151. Citibank has wrongfully obtained, and continues to retain, certain funds and profits as a result of its misconduct, which legally belong to Plaintiffs and other class members.

152. Plaintiffs and other class members are entitled to the imposition of a constructive trust containing all assets, funds, and property derived from Citibank's wrongful acts, with Citibank serving as constructive trustees for the benefit of Plaintiffs.

## TENTH CAUSE OF ACTION
### (Federal Declaratory Judgment Act)

153. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

154. The parties have a genuine dispute over whether Citibank's actions violate the SCRA and TILA and over the validity of the Regulation Z exception that purports to allow raising rates on veterans' outstanding balances.

155. Plaintiffs seek declaratory and injunctive relief establishing the requirement of SCRA, TILA, and MLA as applied to Citibank's conduct and enjoining Citibank's future violations of those statutes.

156. The Federal Declaratory Judgment Act gives this Court the discretion to entertain a declaratory judgment action. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-

87 (1995). 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." This Court also has the power to grant "further necessary or proper relief based on a declaratory judgment." 28 U.S.C. § 2202.

## PRAYER FOR RELIEF

**WHEREFORE,** on behalf of themselves and all other persons similarly situated, Plaintiffs respectfully pray for the following relief:

a. An Order certifying the class, appointing the named Plaintiffs as class representatives and Plaintiffs' attorneys as class counsel;

b. Factual findings that Citibank has violated the Servicemembers Civil Relief Act, the Truth in Lending Act, the Military Lending Act, and other applicable statutes and rules;

c. An award of statutory, compensatory, consequential, and punitive damages;

d. An award of pre- and post-judgment interest;

e. The imposition of a constructive trust containing all assets, funds, and property derived from Citibank's wrongful acts, with Citibank serving as constructive trustees for the benefit of Plaintiffs and class members;

f. An Order requiring disgorgement of Citibank's ill-gotten gains to pay restitution to Plaintiffs and all members of the class;

g. An accounting of all assets, funds, revenues, and profits received and retained by Citibank as a result of their improper actions;

h.   Declaratory and injunctive relief establishing the requirement of SCRA, TILA, and the MLA as applied to Citibank's conduct and enjoining Citibank's future violations of those statutes;

i.   Declaratory and injunctive relief as requested herein;

j.   Recovery of reasonable costs and attorneys fees;

k.   A jury trial on all issues so triable; and

l.   Such other relief as this Court may deem just and proper.

RESPECTFULLY submitted this 22nd day of September, 2022.


**ZAYTOUN BALLEW & TAYLOR, PLLC**

By:   */s/ Matthew D. Ballew*
      Matthew D. Ballew, NCSB # 39515
      Paul J. Puryear, Jr., Of Counsel, NCSB# 41536
      3130 Fairhill Drive, Suite 100
      Raleigh, NC 27612
      Telephone: (919) 832-6690
      Facsimile: (919) 831-4793
      MBallew@zaytounlaw.com
      PJPuryear@zaytounlaw.com

      *Local Rule 83.1 Counsel*

**SMITH & LOWNEY, PLLC**

By:   */s/ Knoll D. Lowney*
      Knoll D. Lowney, WSBA# 23457
      Claire Tonry, WSBA# 44497
      Marc Zemel, WSBA# 44325
      Alyssa Koepfgen, WSBA# 46773
      2317 E. John Street
      Seattle, Washington 98112
      Telephone: (206) 860-2883
      Facsimile: (206) 860-4187
      Knoll@smithandloweny.com
      Claire@smithandlowney.com

Marc@smithandlowney.com
Alyssa@smithandlowney.com

*Attorneys for Plaintiffs*