IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA (WESTERN DIVISION)
CASE NO. 5:22-cv-00383-BO-RN

PABLO ESPIN, NICHOLAS PADAO, )
JEREMY BELL and KEITH TAYLOR, )
*on behalf of themselves and others similarly* )
*situated*, )
                                                  )
        Plaintiffs, )
                                                  )
v. )
                                                  )
CITIBANK, N.A., )
                                                  )
        Defendant. )

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

The United States of America respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, to address a question of law raised in Citibank's Contested Motion to Compel Arbitration and Stay Action (ECF No. 22) and Citibank's accompanying Memorandum (ECF No. 23): the impact of the Servicemembers Civil Relief Act, 50 U.S.C. § 3901 *et seq.* ("SCRA"), on a defendant's ability to compel arbitration against plaintiffs bringing a putative class action alleging SCRA violations. The United States does not address any other issues related to Citibank's motion or the merits of the parties' substantive claims or defenses.

**I.    INTEREST OF THE UNITED STATES**

The United States Department of Justice has authority to enforce the SCRA. *See* 50 U.S.C. § 4041. Congress enacted the SCRA to (1) "provide for, strengthen, and expedite the national defense" by enabling servicemembers "to devote their entire energy to the defense needs

1

of the Nation" and (2) "provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."  50 U.S.C. § 3902; *see also Brewster v. Sun Trust Mortg., Inc.*, 742 F.3d 876, 879 (9th Cir. 2014) (the SCRA effectuates "the Congressional purpose of granting active-duty members of the armed forces repose from some of the trials and tribulations of civilian life").  Without vigorous enforcement of the SCRA, our Nation's ability to meet its critical defense needs could suffer.  The Department of Justice does not have the resources to enforce every potential SCRA violation, and therefore private actions serve an important role in the SCRA's enforcement.

## II. BACKGROUND

For purposes of the United States' Statement of Interest, the relevant facts are as follows:

On September 22, 2022, Plaintiffs Pablo Espin, Nicholas Padao, Jeremy Bell, and Keith Taylor filed a class action complaint in this Court.  ECF No. 1.  Plaintiffs allege, *inter alia*, that Citibank engaged in violations of 50 U.S.C. § 3937, which allows eligible servicemembers to obtain a 6% interest rate cap on pre-service debts during periods of military service and, under some circumstances, before or after the period of military service.  *Id.* at ¶¶ 89-102; *see* 50 U.S.C. § 3937(a)(1); *see also* 50 U.S.C. § 3917(a).

On December 22, 2022, Citibank filed a motion to compel arbitration and stay the case.  ECF No. 22.  The motion is based on Citibank's credit card agreement, which includes an arbitration provision that explicitly waives the customer's "right to go to court, have a jury trial or initiate or participate in a class action."  ECF No. 23, at 5-7.  The provision further states that arbitration must occur on "an individual basis," without "class action … or other representative"

2

proceedings. *Id.* at 6. Citibank's motion and accompanying memorandum (ECF No. 23) did not address whether the SCRA guarantees servicemembers the availability of a judicial forum to pursue a class action notwithstanding the existence of a prior mandatory arbitration agreement.

### III.     STATUTORY FRAMEWORK OF THE SCRA

The Servicemembers Civil Relief Act, which traces its origins to the Civil War era, provides important protections to servicemembers serving our country in the military and other uniformed services. As noted above, the law's explicit purpose is to allow servicemembers to "devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902. In furtherance of this important national purpose, the SCRA "must be read with an eye friendly to those who dropped their affairs to answer their country's call." *Gordon v. Pete's Auto Service of Denbigh*, 637 F.3d 454, 458 (4th Cir. 2011) (quotations & citations omitted);[1] *see also Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948) (interpreting SCRA predecessor statute); *Boone v. Lightner*, 319 U.S. 561, 575 (1943) (predecessor statute is "liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation").

The SCRA provides numerous protections for servicemembers in the areas of court proceedings, interest rates, mortgages, auto loans, leases, and enforcement of storage liens, among others. 50 U.S.C. § 3901 *et seq*. Among the SCRA's important protections is the right of eligible servicemembers to have the interest rate on their pre-service debts capped at 6% during periods of military service. 50 U.S.C. § 3937.

---

[1] The SCRA was recodified on December 1, 2015 at 50 U.S.C. § 3901 *et seq*. Thus, court opinions prior to that date refer to its prior codification at 50 U.S.C. App. § 501 *et seq*. The recodification did not result in any changes in the SCRA's substantive provisions.

3

The SCRA provides two methods of civil enforcement. First, the United States Attorney General has the right to bring actions alleging a pattern or practice of SCRA violations or a violation of the SCRA that raises an issue of significant public importance. 50 U.S.C. § 4041. The Attorney General may seek monetary damages and other relief for persons aggrieved by SCRA violations. *Id*. Second, persons aggrieved by SCRA violations have the right to bring private actions seeking injunctive, declaratory, and monetary relief. 50 U.S.C. § 4042(a). In 2019, Congress amended the SCRA to provide servicemembers the right to enforce their SCRA rights through class actions, despite any previous agreement to the contrary. *See* 50 U.S.C. § 4042(a)(3); National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 547, 122 Stat. 1198, 1378 (2019).

## IV. ARGUMENT

The SCRA states: "Any person aggrieved by a violation of [the SCRA] may in a civil action…be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a). This provision protects the right of plaintiffs to seek class relief for SCRA violations in federal court, regardless of the existence of any prior arbitration agreement or class action waiver to the contrary.

### A. The SCRA Permits Plaintiffs to Pursue Their Class Claims in Federal Court Notwithstanding Their Previous Agreement to Arbitrate

The Federal Arbitration Act ("FAA") establishes that "courts must place arbitration agreements on an equal footing with other contracts… and enforce them according to their terms…." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Epic Sys.*

4

*Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (noting that the FAA's savings clause "establishes a sort of 'equal-treatment' rule for arbitration contracts"). With certain exceptions, the FAA states that any "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. If a plaintiff brings suit concerning "any issue referable to arbitration under an agreement in writing for such arbitration," a court hearing the case must, "upon being satisfied that the issue involved . . . is referable to arbitration," and "on application of one of the parties," stay the proceedings and refer the issue to arbitration. 9 U.S.C. § 3.

"Like any statutory directive, the [FAA's] mandate" to enforce certain arbitration agreements "may be overridden by a contrary congressional command" appearing in another statute. *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987). To establish an entitlement to proceed in court, a party opposing arbitration in a case that would otherwise be governed by the FAA can show that Congress "evinced an intention to preclude a waiver of judicial remedies." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citation omitted); *see also Epic Sys.*, 138 S. Ct. at 1624 (stating that Congress's intent to displace the FAA must be "clear and manifest") (citation omitted).

The language of 50 U.S.C. § 4042(a)(3) clearly and manifestly establishes Congress's intent to provide plaintiffs a right to pursue class claims for SCRA violations in court, notwithstanding any previous arbitration agreement.

5

### 1. Section 4042(a)(3) grants all SCRA plaintiffs an unwaivable right to bring class action claims in a judicial forum

50 U.S.C. § 4042(a) permits an aggrieved person to participate in a "civil action" as "a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure." 50 U.S.C. § 4042(a). Admittedly, permission by Congress to bring a civil action does not, by itself, override an arbitration agreement. *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100 (2012) (noting that the "mere formulation of the cause of action in this standard fashion" does not "establish the 'contrary congressional command'" necessary to "overrid[e] the FAA"). But the SCRA goes further and grants the right to pursue class claims in a civil action, "*notwithstanding any previous agreement to the contrary*"—which would include any previous arbitration agreement. 50 U.S.C. § 4042(a) (emphasis added). This statutory text shows Congress's clear and manifest "intent[] to preclude a waiver of judicial remedies." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

In *Lyons v. PNC Bank, National Association*, 26 F.4th 180 (4th Cir. 2022), the Fourth Circuit recently held that a similar statutory provision in the Truth in Lending Act ("TILA") "clear[ly] and unambiguous[ly]" prohibited the enforcement of certain prior arbitration agreements. *Lyons* addressed a statutory provision barring certain "agreement[s]" from being "applied or interpreted so as to bar a consumer from bringing an action" in district court. *Id.* at 186 (quoting 15 U.S.C. § 1639c(e)(3)) (emphasis omitted). In reaching its decision, the Fourth Circuit explained that "Supreme Court cases which have held that arbitration is not precluded merely because a statute provides a plaintiff with a cause of action" are "inapposite" because the

provision at issue "*expressly prohibits* a covered agreement from *barring* a consumer 'from bringing an action in an appropriate district court.'" *Id.* at 187 (quoting 15 U.S.C. § 1639c(e)(3)) (emphasis in original). The court reasoned that "there is a substantive difference between finding that arbitration is an appropriate alternative mechanism to enforce a statutorily created right to sue and overriding an express congressional command proscribing waiver of a specific judicial forum." *Id.* The Fourth Circuit reached this conclusion even though the TILA provision at issue does not "include the term 'arbitration.'" *Id.* Here, too, Section 4042(a)(3) clearly and expressly prohibits any "previous agreement"—which would include an arbitration agreement— from barring an aggrieved person from participating as a class member or representative in an SCRA "civil action" in district court. 50 U.S.C. § 4042(a)(3).

Both the provision at issue in *Lyons* and Section 4042(a)(3) are distinguishable from the Supreme Court's holding in *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012). In *CompuCredit*, the Court considered a statute that included both a civil liability provision, 15 U.S.C. § 1679g, and a separate provision voiding "[a]ny waiver by any consumer of . . . any right of the consumer under this subchapter," 15 U.S.C. § 1679f(a). *CompuCredit*, 565 U.S. at 99-101. The Court held that the statute did not preclude enforcement of an arbitration agreement because the nonwaiver provision was inapplicable to the civil liability provision. Thus, "the waiver of initial judicial enforcement is not the waiver of a 'right of the consumer'" within the meaning of the statute. *Id.* at 101.

By contrast, the nonwaiver provision of Section 4042(a)(3) plainly attaches to a servicemember's right to bring a class action: In a single sentence, Congress expressly provided a class-action remedy for SCRA plaintiffs, "notwithstanding any agreement to the contrary." 50

7

U.S.C. § 4042(a)(3). This statutory language is thus akin to language *CompuCredit* recognized *would* clearly evince Congress's intention to preclude enforcement of an arbitration clause. *See* 565 U.S. at 103-04 (citing, for example, a statute stating that "[n]o predispute arbitration agreement" meeting certain criteria "shall be valid or enforceable") (citation omitted).

Further, Section 4042(a)(3)'s reference to participation in a class action "in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary," reinforces the conclusion that Congress intended to grant an unwaivable right to bring class actions in federal court. *See* Fed. R. Civ. P. 23 (governing federal class actions). Major arbitration services do not fully adopt the Federal Rules in their proceedings, and many arbitration agreements, including the one at issue here, do not permit the use of Rule 23 at all. Moreover, by including a reference to the Federal Rules in the SCRA amendment, Congress undoubtedly intended to ensure that servicemembers could effectively exercise the right to class proceedings protected by this provision. Indeed, Congress' inclusion of this language came just one year after the Supreme Court's rejection in *Epic Systems* of a challenge to arbitration agreements with class action waivers under the National Labor Relation Act's "concerted activity" principle, because—unlike here—the NLRA "does *not* mention class or collective action procedures" expressly or "even hint" at a conflict with individualized arbitration. 138 S. Ct. at 1624 (emphasis added); *see also id.* at 1624-26 (further explaining that Congress likely did not contemplate class actions when the NLRA was passed in 1935 because Rule 23 was not created until 1966).

Finally, additional legislative context of Section 4042(a)(3)'s enactment evinces Congress's intent to allow plaintiffs to have class action SCRA claims heard in federal court.

8

Congress first expressly provided a private right of action—by enacting Section 4042(a)(1) and (a)(2)—in 2010. *See* Veterans' Benefits Act of 2010, Pub. L. No. 111–275, title III, § 303(a), 124 Stat. 2864, 2877 (2010). Against this backdrop, Congress amended the statute in 2019 to add Section 4042(a)(3). *See* National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 547, 133 Stat. 1198, 1378 (2019). The preexisting explicit right of action highlights the 2019 amendment's distinct purpose: to create a non-waivable right for class actions to be maintained in a judicial forum. *Cf. id.* (noting that the language added to 50 U.S.C. § 4042 "shall not be construed to imply that a person aggrieved by a violation of such Act did not have a right to bring a civil action as a representative party on behalf of members of a class or be a member of a class in a civil action before the date of the enactment of this Act").

The right to participate in class actions to vindicate SCRA rights is particularly important due to the unique position in which servicemembers often find themselves. They may be deployed or stationed abroad, often in situations requiring them to be free of distractions in order to ensure our national security and their own personal safety. The SCRA exists to allow that focus. It is hard enough for servicemembers to devote the time and attention necessary to seek the benefits to which they are entitled. *See, e.g.*, Consumer Financial Protection Bureau, Protecting Those Who Protect Us: Evidence of activated Guard and Reserve servicemembers' usage of credit protections under the Servicemembers Civil Relief Act (Dec. 7, 2022), available at https://www.consumerfinance.gov/data-research/research-reports/evidence-of-servicemembers-usage-of-credit-protections-under-scra/ (noting the low percentage of eligible servicemembers who ask for SCRA interest rate benefits). Congress recognized that when their rights are violated, servicemembers should not be further required to pursue their cases on an

9

individual basis, which could distract them from their national defense duties.[2] The SCRA accounts for this, both by allowing the United States to obtain relief on their behalf, 50 U.S.C. § 4041(b), and by permitting class actions in federal court even where there is a prior agreement requiring individual arbitration or otherwise prohibiting class claims.

### 2. At a minimum, Section 4042(a)(3) grants all SCRA plaintiffs an unwaivable right to bring class claims in some forum, and a court is the only forum in which plaintiffs in this case can bring class claims

Even if the Court interprets Section 4042(a)(3) to grant rights that could be exercised in either a judicial or arbitral forum, the statute, when applied to the arbitration agreements at issue in this case, would still require plaintiffs' SCRA claims to proceed in federal court. As discussed above, Section 4042(a)(3) grants aggrieved persons "in a civil action" the right to be "a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary."

Even ignoring the text establishing that this unwaivable right pertains to *judicial proceedings*, the statute, at a minimum, sets forth an unwaivable right to pursue class proceedings in *some forum*, as it "'evinc[es] an intention to preclude a waiver' of class-action procedure." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234 (2013) (quoting *Mitsubishi Motors*, 473 U.S. at 628).

---

[2] To be sure, the SCRA does provide for the tolling of statutes of limitation during periods of military service. 50 U.S.C. § 3936(a). But, at least where conduct affects a broader group of servicemembers such that class proceedings are possible, a servicemember should not have to wait until they leave military service to obtain relief for violations of the statute.

10

In the absence of an agreement by the parties that class arbitration is available, however, court action is the only means by which a class proceeding may be brought. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019); *Epic Sys.*, 138 S. Ct. at 1622-23. Here, there is no consent to class arbitration. ECF No. 23, at 6 (quoting arbitration clause language specifying that any arbitration must take place on "an individual basis," without "class action … or other representative" proceedings). The right to participate in class proceedings means nothing if plaintiffs' claims must be heard in a forum where class proceedings are unavailable. *See Mitsubishi Motors*, 473 U.S. at 637 (explaining that the ability of a "prospective litigant [to] effectively…vindicate its statutory cause of action in the arbitral forum" is necessary in order to effectuate a statute's purpose). Such a reading would also contravene the principle that the SCRA must be construed liberally in favor of servicemembers. *See Gordon*, 637 F.3d at 458. Plaintiffs' SCRA class claims therefore must go forward in federal court.

### B. Section 4042(a)(3) Applies with Respect to SCRA Violations Occurring Prior to its Enactment

It is appropriate for the Court to apply 50 U.S.C. § 4042(a)(3), which became law in December 2019, to the SCRA violations alleged by plaintiffs that occurred prior to that date.

A statute is not impermissibly retroactive "merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994). Rather, a three-step analysis applies when considering whether a statute is retroactive: (1) a court first determines if Congress has "expressly prescribed the statute's proper [temporal] reach"; (2) if not, a court evaluates whether the new statute has a retroactive effect in the disfavored sense of "affecting substantive rights, liabilities, or duties"; and (3) if so, a court

applies a presumption against retroactivity. *See id.* at 278, 280; *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37-38 (2006).

Here, as Congress did not clearly define the temporal reach of Section 4042(a)(3), the Court must proceed to the second step and consider whether the statute alters "substantive rights, liabilities, or duties" that existed prior to the statute's enactment. *Landgraf*, 511 U.S. at 278. "Statutes are disfavored as retroactive when their application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Fernandez-Vargas*, 548 U.S. at 37 (citation omitted); *see also Landgraf*, 511 U.S. at 269-70 (explaining that "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment").

In contrast to statutes that affect substantive rights or liabilities, statutes that introduce only jurisdictional or procedural changes are not retroactive. *Landgraf*, 511 U.S. at 274-76. If a statute merely "changes the tribunal that is to hear the case, . . . no retroactivity problem arises because the change in the law does not 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Hamdan v. Rumsfeld*, 548 U.S. 557, 577 (2006) (citations and quotations omitted); *see also Landgraf*, 511 U.S. at 274 (noting that present law usually governs where a new jurisdictional rule is concerned because "[a]pplication of [such a] rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'") (quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916)).

So too here. The change made by Section 4042(a)(3) is jurisdictional, as it "simply allows servicemembers to enforce their SCRA rights . . . in federal court" rather than through

12

arbitration. *See Gordon*, 637 F.3d at 461. As a result, Section 4042(a)(3) appropriately applies to conduct prior to its enactment.

In addition, "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S. at 275 (discussing cases). For example, in *Landgraf* the Court concluded that while the "jury trial right set out in [a provision of Title VII] is plainly a procedural change…that would ordinarily govern in trials conducted after its effective date," the right was attached to new damages provisions, which were deemed impermissibly retroactive. *Id.* at 280-81; *see also Ex parte Collett*, 337 U.S. 55, 71 (1949) (holding that a new law authorizing transfer of actions applied to suit instituted before its enactment because, in part, the parties do not have a vested right in any particular mode of procedure); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 373 (4th Cir. 2021) ("Changes in procedural rules, such as the right to a jury and the lifting of sovereign immunity, tend not to have a retroactive effect while changes to substantive rules, such as a new right to damages, do."). As in these cases, Section 4042(a)(3) may be read as introducing a procedural change: a requirement to proceed under the Federal Rules of Civil Procedure in federal court, instead of in an arbitral forum subject to that forum's procedural rules. The case law is clear that such procedural changes do not create a disfavored retroactive effect.

The Fourth Circuit's opinion in *Gordon*, which involved a retroactivity analysis of Section 4042 when it was first enacted, is particularly instructive. The court—applying the "classical retroactivity analysis" of *Landgraf*—held that the then-current version of Section 4042(a), which was first enacted in 2010 to explicitly authorize private SCRA lawsuits, was not considered impermissibly retroactive even though it was applied in an SCRA case filed prior to

13

Section 4042's enactment. *Gordon*, 637 F.3d at 458-61. The court reasoned that the provision "simply allows servicemembers to enforce their SCRA rights—previously enforceable in state tribunals—in federal court," and "merely 'regulate[s] the secondary conduct of litigation and not the underlying primary conduct of the parties.'" *Id.* at 461 (quoting *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 951 (1997)). In reaching that conclusion, the *Gordon* court noted that the change did not increase the defendant's potential liability, in contrast to the statutory damages provision found to be impermissibly retroactive in *Landgraf*. *Id.* at 460-61.

Similarly, the new provision of Section 4042 at issue here—Section 4042(a)(3)—does not affect the parties' substantive rights related to the underlying conduct at issue, nor does it alter the relief available to servicemembers for SCRA violations. The same substantive rights and relief are available in arbitration and federal court. *See* ECF No. 23-3 at 16 ("The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law."); *see also, e.g., Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) ("An arbitration agreement [under the FAA] thus does not alter or abridge substantive rights; it merely changes how those rights will be processed."); ECF No. 23, at 7.

Further, an arbitration agreement does not itself create a "substantive right" that would be altered by the application of Section 4042(a)(3). A contract to arbitrate is "nothing more than a procedural, forum-shifting term." *Lysik v. Citibank, N.A.*, 2017 WL 4164037, *4 (N.D. Ill. Sept. 20, 2017). It follows, then, that an agreement to arbitrate—a procedural, jurisdictional term— cannot create a "substantive right" sufficient to "appl[y] a presumption against retroactivity."

14

*See Landgraf*, 511 U.S. at 278; *Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 423 (S.D.N.Y. 2012) (holding that Dodd-Frank provisions precluding arbitration, "despite altering a provision of a contract[,] principally concern[ed] the type of jurisdictional statute envisioned in *Landgraf*, and d[id] not affect the substantive rights of either party") (quotations and citations omitted).[3]

In sum, permitting SCRA class action claims to be heard in federal court rather than in an arbitral forum—where the same liability applies and the same relief is available—does not alter the underlying substantive rights of any party. Rather, the change brought about by Section 4042(a)(3) is jurisdictional and procedural, affecting only the means by which plaintiffs may seek to enforce their rights. Thus, it does not have a retroactive effect in the "disfavored" sense, and it is not necessary to proceed to the third step of the *Landgraf* analysis. *See Gordon*, 637 F.3d at 461 n.2 ("Because we find no impermissible retroactive effect, we need not reach the third step of the analysis prescribed by *Landgraf*."). As such, Section 4042(a)(3)'s grant to servicemembers of a right to pursue class actions in court notwithstanding previous agreements to the contrary applies in all cases brought after its enactment.

## CONCLUSION

Section 4042(a)(3) allows plaintiffs in this case to participate in an SCRA class action in federal court notwithstanding their previous agreement to individual arbitration, regardless of

---

[3] Courts have divided on the question of whether the provisions in Dodd-Frank are considered retroactive. *Compare, e.g.*, *Wong*, 890 F. Supp. 2d 411 & *Pezza v. Investors Capital Corp.*, 767 F.Supp.2d 225, 232-34 (D. Mass. 2011) *with, e.g.*, *Weller v. HSBC Mortg. Servs., Inc.*, 971 F.Supp.2d 1072, 1077-80 (D. Colo. 2013) & *Taylor v. Fannie Mae*, 839 F. Supp. 2d 259, 262-63 (D.D.C. 2012). For the reasons explained herein, the inclusion of Section 4042(a)(3) does not alter substantive rights or liabilities and thus is not retroactive in effect.

15

when the SCRA violations are alleged to have occurred. The United States respectfully urges the Court to deny Defendant Citibank, N.A.'s motion to compel arbitration of the SCRA claims.

Dated: March 2, 2023

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

MICHAEL F. EASLEY, JR.
United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

/s/ C. Michael Anderson
C. MICHAEL ANDERSON
Assistant United States Attorney
Chief, Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4530
Facsimile: (919) 856-4821
Email: michael.anderson7@usdoj.gov
N.C. Bar No. 42646

/s/ Alan A. Martinson
SAMEENA SHINA MAJEED
Chief
ELIZABETH A. SINGER
Director, U.S. Attorneys' Fair Housing Program
ALAN A. MARTINSON
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – 4CON.
Washington, D.C. 20530
Telephone: (202) 616-2191
Facsimile: (202) 514-1116
Email: Alan.Martinson@usdoj.gov
Minnesota Bar No. 0392031

/s/ Chelsea W. Draper
CHELSEA W. DRAPER
Assistant United States Attorney
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27612
Telephone: (919) 856 - 4530
Facsimile: (919) 856 – 4821
Email: Chelsea.Draper@usdoj.gov
Missouri Bar No. 64824

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2023, a copy of the foregoing Statement of Interest was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

s/ Alan A. Martinson<br>
ALAN A. MARTINSON<br>
Attorney for the United States