IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-383-BO-RN

PABLO ESPIN, NICHOLAS PADAO, )
JEREMY BELL, and KEITH TAYLOR, )
*on behalf of themselves and others similarly* )
*situated*, )
                                   )
                 Plaintiffs, )
                                   )
v.                                   )        O R D E R
                                   )
CITIBANK, N.A.,                  )
                                   )
                 Defendant. )

This cause comes before the Court on defendant's motions to dismiss. Also pending is a motion by plaintiffs for leave to file a sur-reply. The appropriate responses and replies have been filed, or the time for doing so has expired, and a hearing on the matter was held before the undersigned on September 28, 2023, at Raleigh, North Carolina. In this posture, the motions are ripe for ruling.

BACKGROUND

Plaintiffs have instituted a putative class action against defendant, Citibank, alleging violations of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. §§ 3901 *et seq.*; the Military Lending Act (MLA), 10 U.S.C. § 987 and 32 C.F.R. 232; the Truth in Lending Act (TILA), 15 U.S.C. § 1637(b); and the Credit CARD Act of 2009, 15 U.S.C. 1666i; as well as claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty or special trust. Plaintiffs further seek an accounting, a constructive trust, and a declaratory

judgment. *See, generally*, [DE 26] Amd. Compl. Plaintiffs allege that though Citibank markets itself as a bank dedicated to members of the military, veterans, and their families, it breaches its duties to servicemembers and veterans in a number of ways. Plaintiffs allege that Citibank deprives eligible servicemembers of SCRA benefits and that, when it does provide benefits to servicemembers, those benefits are illusory. Plaintiffs allege that Citibank imposes what they call a "veteran penalty," which refers to certain interest and fee increases imposed only on servicemembers returning to civilian life. At bottom, plaintiffs contend that, among other things, Citibank violates the SCRA by overcharging servicemembers and veterans on their active-duty transactions and the MLA by including unlawful arbitration clauses in contracts with covered military customers and by omitting disclosures mandated by the MLA. *Id.* ¶¶ 1-7; 27; 71; 157.

Citibank has moved to dismiss plaintiffs' original complaint and has moved to dismiss the claims of plaintiffs Padao, Bell, and Taylor from the amended complaint for lack of personal jurisdiction. Plaintiffs allege that the Court has personal jurisdiction over Citibank because it conducts business activities in North Carolina which form the basis of their complaint. Plaintiffs allege that Citibank is incorporated in South Dakota and has its principal place of business in New York.[1] Citibank has a registered agent in Raleigh, North Carolina through which it may be served with process. Plaintiff Espin resides in North Carolina, plaintiff Padao resides in Illinois, and plaintiff Bell resides in Georgia. The factual allegations by Taylor do not state where he resides, but there seems to be no dispute that he does not reside in North Carolina. *Id.* ¶¶ 12, 16, 32, 37, 43.

---

[1] At the hearing, Citibank indicated that its principal place of business is also South Dakota.

DISCUSSION

At the outset, the Court denies as moot Citibank's first motion to dismiss [DE 20] as an amended complaint has been filed. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017).

The Court now turns to Citibank's motion to dismiss the claims of plaintiffs Padao, Bell, and Taylor from the amended complaint for lack of personal jurisdiction. First, the Court, in its discretion, grants plaintiffs' motion for leave to file a supplemental brief in opposition to the motion to dismiss in light of *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 143 S. Ct. 2028 (2023), which was decided after the briefing on the motion was complete. [DE 48]. Plaintiffs did not waive any jurisdictional argument raised in their supplemental brief and the clerk is directed to file the supplemental brief at [DE 48-1].

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When personal jurisdiction has been challenged on the papers alone, the plaintiff must make a prima facie case showing that personal jurisdiction exists, and a court construes all facts and inferences in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). A court may consider affidavits attached to a motion when determining whether the plaintiff has made a prima facie showing of personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676.

The Court, in the exercise of its discretion, will not permit a period of jurisdictional discovery and will resolve the motions on the basis of the briefing and the affidavits submitted by

3

the parties. It must, therefore, "give the plaintiffs' allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff." *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018).

"A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). The North Carolina long-arm statute "permits the exercise of personal jurisdiction to the outer limits allowable under federal due process," so the determinative question is whether a plaintiff has made a showing that a defendant "had sufficient contacts with North Carolina to satisfy constitutional due process." *Id.* at 558–59.

Two types of personal jurisdiction are recognized: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017). To satisfy due process, a plaintiff asserting general jurisdiction must establish that the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The place of incorporation and the principal place of business have for many years been the typical bases for exercising general jurisdiction over a corporate defendant. *Id.* at 139 n.19.

In June of this year, the Supreme Court breathed life back into a line of cases which held that a corporate defendant may consent to general jurisdiction by appointing an agent for service of process or registering to do business within a state. The Supreme Court, relying on its decision in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S.

4

93, 94 (1917), held that a state can, consistent with due process, require an out-of-state corporation to consent to general personal jurisdiction in order to conduct business in that state. *Mallory*, 600 U.S. at 134–36. Consent is key. The Court in *Mallory* distinguished its long line of cases which dealt with exercising personal jurisdiction over corporate defendants using either the "modern view of general jurisdiction," *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 136 (4th Cir. 2020), or specific jurisdiction using the minimum contacts test set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny, as cases in which the corporate defendant had *not* consented to suit in a specific forum. It further noted that its "precedents have recognized, too, that 'express or implied consent' can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed." *Mallory*, 600 U.S. at 137-38.

It is undisputed that this Court may not exercise personal jurisdiction under the modern view of general jurisdiction. Citibank is not incorporated in North Carolina, nor does it have its principal place of business here. So, for this Court to have general jurisdiction over Citibank, Citibank must have consented to that jurisdiction under North Carolina Law.

In order to conduct business in North Carolina, a foreign corporation must obtain a certificate of authority from North Carolina's Secretary of State. N.C. Gen. Stat. § 55-15-01(a). "Each foreign corporation authorized to transact business in this State must maintain a registered office and registered agent as required by Article 4 of Chapter 55D of the General Statutes and is subject to service on the Secretary of State under that Article." *Id.* § 55-15-07. Citibank does not dispute that it is registered to conduct business in North Carolina and that it has appointed a process agent in accordance with N.C. Gen. Stat. § 55D-30(a)(2). Service on a registered agent constitutes effective service. *Id.* § 55D-33(a). Moreover, "a foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and is

5

subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character." *Id.* § 55-15-05. Finally, the North Carolina long-arm statute provides for personal jurisdiction over a claim asserted against a party who is, *inter alia*, "engaged in substantial activity with this State, whether such activity is wholly interstate, intrastate, or otherwise. *Id.* § 1-75.4.

The above-cited North Carolina statutes differ from the Pennsylvania statute at issue in *Mallory*. The latter expressly states that corporate registration confers "a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person . . .." 42 Pa. Stat. and Cons. Stat. Ann. § 5301. However, as Justice Alito explained in *Mallory*, where a "large company incorporated in one State was actively engaged in business in another State" and that company "took steps that, under the express terms *or* previous authoritative construction of state law, were understood as consent to the State's jurisdiction on all claims," it would be constitutionally proper to exercise general personal jurisdiction over that company. *Mallory*, 600 U.S. at 152 (Alito, J., concurring in part and concurring in the judgment) (emphasis added). Accordingly, that the North Carolina statutes cited above do not expressly confer general personal jurisdiction over corporate entities registered to do business here is not fatal to plaintiffs' theory of jurisdiction. Rather, plaintiffs have identified authoritative prior construction of North Carolina law which would support a finding of general jurisdiction under *Mallory*.

In 1917, the North Carolina Supreme Court held that

> when a state, by its statutes, has established and provided a method of personal service of process on foreign corporations doing business therein, one that is reasonably calculated to give full notice to such companies of the pendency of suits against them, these provisions are to be regarded as conditions on which they are allowed to do business within the state, and when they afterwards come into the

6

state and enter on their business they are taken to have accepted as valid the statutory method provided, and such a service will be held to confer jurisdiction.

*Oliver v. U.S. Fid. & Guar. Co.*, 174 N.C. 417 (1917). It later held that "when a foreign corporation has property in this state and is here present transacting its corporate business through local agents, such corporation is amenable to service of process according to the provisions of C. S. § 483 . . . and that this statute in the respect here assailed neither offends against the commerce clause of the Federal Constitution (art. 1, § 8, cl. 3) nor runs counter to the Fourteenth Amendment." *Steele v. W. Union Tel. Co.*, 206 N.C. 220 (1934). Finally, in 1955, in an action by a non-North Carolina resident against a foreign corporation, the North Carolina Supreme Court held

> that a nonresident has access to the courts of this State is not debatable. That he can sue a foreign corporation is also beyond dispute. But to bring the foreign corporation into court the service of process must be made upon an officer or agent as defined in G.S. s 1-97, and in the following cases only: (1) Where it has property in this State; or (2) where the cause of action arose in this State; or (3) where the service can be made personally upon some officer designated in G.S. s 1-97.

*Babb v. Cordell Indus., Inc.*, 242 N.C. 286, 288 (1955).

Plaintiffs have proffered evidence that Citibank owns property in North Carolina, that it has high-level corporate officers and employees in North Carolina who conduct business on behalf of Citibank and manage thousands of other Citibank employees, and that Citibank has hundreds of automated teller machines in North Carolina. It is further undisputed that Citibank has borrowers in North Carolina and that Citibank has a designated agent for service of process.

In light of *Mallory*, North Carolina's statutory requirements which demand, among other things, that foreign corporations be held to the same privileges and duties as domestic corporations, coupled with the undisturbed North Carolina Supreme Court precedent cited above, is sufficient to demonstrate that this Court has general personal jurisdiction over Citibank. *See also In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prod. Liab. Litig.*, No. 22 C 02011, 2023 WL 4976182, at *3 (N.D. Ill. Aug. 3, 2023) ("Under Missouri law, registered foreign corporations are treated like

7

domestic corporations and can, accordingly, be haled into court there."). This conclusion does not offend due process, even if it "took [Citibank] by surprise[,]" *Pennsylvania Fire*, 243 U.S. at 95, as Citibank has "taken full advantage of its opportunity to do business in [North Carolina.]" *Mallory*, 600 U.S. at 141.

The Court further finds that, at this preliminary stage, plaintiffs have also made a prima facie showing of specific jurisdiction. To determine whether specific jurisdiction exists, a defendant must have purposefully availed itself of the privilege of conducting business within the forum state, giving it "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes places in the forum State and is therefore subject to the State's regulation.") (internal alterations, quotation, and citation omitted). Irrespective of any unconnected activities to the forum state, specific jurisdiction is lacking where there is no connection between the forum and the suit. *Bristol-Myers Squibb*, 582 U.S. at 264.

When determining whether specific jurisdiction exists, a court considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting business in the state, (2) whether the plaintiff's claims arise out of those activities directed toward the state, and (3) whether the exercise of specific jurisdiction would be constitutionally reasonable to determine whether specific jurisdiction has been established. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

It is true that Citibank does not have any bank branches in North Carolina. *See* [DE 46-1 ¶ 5]. It does, however, have corporate offices, a number of employees, to include high-level

8

corporate employees, customers, and automated teller machines in North Carolina. *See, generally,* [DE 44]; *see also Sneha Media,* 911 F.3d at 198 (listing nonexhaustive factors). Plaintiffs have sufficiently demonstrated that Citibank's contacts with North Carolina are not "random, isolated, or fortuitous" and further that by opening offices and recruiting employees in North Carolina it has sought to "exploit [this] market." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citations omitted).

The primary dispute between the parties on this issue appears to be whether Padao's, Bell's, and Taylor's claims arise out of Citibank's activities directed toward North Carolina. Plaintiffs' amended complaint alleges that Citibank applies requirements for the MLA and the SCRA for consumer lending and conducts audits related to the MLA and the SCRA *from its offices in North Carolina*. Amd. Compl. ¶ 17 (emphasis added). Plaintiffs also allege that Citibank's technology team located in North Carolina is involved in maintaining those automated processes which are related to SCRA and MLA application, to include generating communications with plaintiffs and others about the MLA and SCRA benefits and disclosures required by statute. *Id.* These allegations support that the claims of Padao, Bell, and Talyor arise from Citibank's North Carolina activities.

Finally, the Court determines that the exercise of personal jurisdiction over Citibank would be constitutionally reasonable as there is nothing in this record which would suggest that litigating in this forum would be "gravely difficult and inconvenient" for Citibank. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012) (citation omitted).

The Court deems these allegations and the evidence proffered by plaintiffs to be sufficient, when drawing all inferences in plaintiffs' favor, to establish that the Court may, consistent with due process, exercise personal jurisdiction over Padao's, Bell's, and Taylor's claims against Citibank. The motion to dismiss for lack of personal jurisdiction is therefore denied.

9

## CONCLUSION

Accordingly, for the foregoing reasons, Citibank's first motion to dismiss [DE 20] is DENIED AS MOOT, plaintiffs' motion for leave to file a supplemental brief in opposition [DE 48] is GRANTED, and Citibank's motion to dismiss the claims of Padao, Bell, and Taylor for lack of personal jurisdiction [DE 32] is DENIED. The clerk is DIRECTED to file the supplemental brief at [DE 48-1] as of the date of entry of this order.

SO ORDERED, this 29 day of September 2023.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE