IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-383-BO-RN

PABLO ESPIN, NICHOLAS PADAO, )
JEREMY BELL, and KEITH TAYLOR, )
*on behalf of themselves and others similarly* )
*situated*, )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiffs, 　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　v. 　　　　　　　　　　　　　　　　　　) 　　　O R D E R
　　　　　　　　　　　　　　　　　　　　　)
CITIBANK, N.A., 　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendant. 　　　　　)

This cause comes before the Court on defendant's motion to compel arbitration and stay this action. The appropriate responses and replies have been filed and a hearing on the matter was held before the undersigned on September 28, 2023, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling.

BACKGROUND

The Court incorporates the general factual and procedural background outlined in its order denying defendant Citibank's motions to dismiss for lack of personal jurisdiction. Because the Court has determined that it can exercise personal jurisdiction over the claims of the named plaintiffs against Citibank, it now proceeds to determine whether this matter must be stayed and referred to arbitration.

Each named plaintiff has an account with Citibank. According to Citibank's records, each named plaintiff received correspondence from Citibank which contained an arbitration agreement. *See* [DE 23-2] Booth Decl. ¶¶ 4-28; [DE 23-13] Grayot Decl. ¶¶ 5-10. In addition to arbitration

agreements contained in their original Card Agreements, in 2015 and 2016 Citibank provided plaintiffs with new credit cards and New Card Agreements, with correspondence about "important changes to [their] account terms," (Change-In-Terms), or for new customers like Padao simply New Card Agreements. *See, e.g.,* Booth Decl. ¶¶ 8, 15. Pursuant to the New Card Agreements and Change-In-Terms, plaintiffs had the right to reject the arbitration provision in writing by a date certain. *Id.* ¶ 9. Citibank contends that each of the plaintiffs received notice of the arbitration agreement and that it has no records reflecting that any of the named plaintiffs rejected the arbitration provision.

> The most recent New Card Agreement arbitration provisions provide that
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/ subsidiary company.

*See, e.g.,* [DE 23-5 p. 16]. They further purport to waive a borrower's ability to participate in a class action by providing that

> Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action.

*See, e.g.* [DE 23-16 p.6].

Plaintiffs do not deny that their New Card Agreements include arbitration provisions and they do not argue that they, in fact, opted out of those provisions. Rather, they contend that the

arbitration agreements are unenforceable as to their claims in this case because they are void in light of amendments to the Servicemembers Civil Relief Act (SCRA) and the Military Lending Act (MLA) and its implementing regulations. Plaintiffs further contend that the severability clauses in plaintiffs' arbitration provisions expressly state that their claims here, which are class and representative claims, are not covered by the agreement to arbitrate.

The United States has filed a statement of interest in this case in which it contends that the SCRA overrides the Federal Arbitration Act's mandate that valid arbitration agreements be enforced. [DE 29]. A group of military organizations has also sought leave to file an amicus curiae brief in support of plaintiffs. [DE 35]. That request is allowed and the Court has considered the arguments of the military organizations.

## DISCUSSION

The Federal Arbitration Act ("FAA") "reflects a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quotations omitted). A district court must stay proceedings and compel arbitration if the moving party demonstrates: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of the nonmovant to arbitrate the dispute. *Id.* at 500–01. The purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

3

"The Servicemembers Civil Relief Act is part of a long record of congressional concern for the domestic affairs of those in military service." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457 (4th Cir. 2011). Moreover, "the United States Supreme Court has unambiguously required courts to give a broad construction to the statutory language of the SCRA to effectuate the Congressional purpose of granting active-duty members of the armed forces repose from some of the trials and tribulations of civilian life . . .." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 879 (9th Cir. 2014).

Section 547 of the National Defense Authorization Act for Fiscal Year 2020 amended the SCRA to provide as follows: "Any person aggrieved by a violation of [the SCRA] may in a civil action . . . be a representative party on behalf of members of a class or be a member of a class, in accordance with the Federal Rules of Civil Procedure, notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a). Congress further stated that this amendment "shall not be construed to imply that a person aggrieved by a violation of such Act did not have a right to bring a civil action as a representative party on behalf of members of a class or be a member of a class in a civil action before the date of the enactment of this Act." 116 P.L. 92, div. A, title V § 547(b), 133 Stat. 1198 (2019).

Congress, in its amendment to the SCRA, made clear that, notwithstanding any agreement to the contrary, servicemembers may bring and participate in class actions to enforce the provisions of the SCRA. Pursuant to Citibank's own arbitration terms, "If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, *except that there can be no arbitration of a class or representative Claim.*" *See* [DE 23-5 p. 17] (emphasis added). Thus, the Court agrees with plaintiffs that it need not consult the FAA in this case as Citibank's own arbitration agreement confirms that any class claim, which the SCRA mandates that plaintiffs may

4

bring, cannot be arbitrated. That the SCRA was amended to add class action protection in 2019, after these plaintiffs entered into the arbitration agreements, is of no moment as Congress dictated that the right to bring a class action exists "notwithstanding any prior agreement to the contrary." Where Congress has expressly dictated the reach of a statute, courts must follow Congress' instructions. *Frontier-Kemper Constructors, Inc. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 876 F.3d 683, 688 (4th Cir. 2017). It is plain from the language of the SCRA amendment that Congress intended the class-action protections to extend to agreements entered into prior to its passage. To the extent that Congress has not clearly articulated the reach of the SCRA class action protections, "unlike other intervening changes in the law, a jurisdiction-conferring or jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'" and thus may be applied retroactively. *Hamdan v. Rumsfeld*, 548 U.S. 557, 576–77 (2006) (citation omitted).

To the extent it must consider the FAA, the Court determines that arbitration is not required in this case. For plaintiffs to prevail, they must demonstrate that "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26. Evidence of Congress's intention may be found in the text of the SCRA, its legislative history, or in "an 'inherent conflict' between arbitration and the [SCRA's] underlying purposes." *Id.*; *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (only where Congress has demonstrated a "clear and manifest" intention that one statute should displace another may a court so find).

While the SCRA is silent as to arbitration specifically, it was nonetheless amended to codify the unwaivable right of servicemembers to bring and participate in class actions, "notwithstanding any previous agreement to the contrary." 50 U.S.C. § 4042(a). Importantly

5

"[t]here is a substantive difference between finding that arbitration is an appropriate alternative mechanism to enforce a statutorily created right to sue and overriding an express congressional command proscribing waiver of a specific judicial forum." *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180, 187 (4th Cir. 2022). Here, Congress, in its amendment to the SCRA, made clear that servicemembers may bring and participate in class actions in accordance with the Federal Rules of Civil Procedure to enforce the provisions of the SCRA. The Supreme Court has "stressed that the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act." *Epic Sys.*, 138 S. Ct. at 1627. But the SCRA provides such a discussion. By providing servicemembers with an unwaivable right to participate in a class action and providing that those actions may be filed in accordance with the Federal Rules of Civil Procedure, which are generally not fully applicable in arbitration proceedings, Congress has evinced its intent to proscribe waivers of the right to pursue relief as a class in federal court. The Court may not, of course, ignore Congress' reference to the Federal Rules of Civil Procedure. *See Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). Congress's decision to include reference to both the Federal Rules of Civil Procedure and apply § 4042(a) notwithstanding prior agreements to the contrary demonstrates its clear and manifest "intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

At bottom, the Court has considered Citibank's arguments to the contrary and finds the cases it has cited either inapposite or not in conflict with the Court's decision. The Court will not refer plaintiffs' putative class claims to arbitration. Based upon the foregoing, the Court declines reach any additional grounds raised by the parties in support of or opposition to the motion.

6

## CONCLUSION

Accordingly, for the foregoing reasons, Citibank's motion to compel arbitration and stay this action [DE 22] is DENIED.


SO ORDERED, this 29 day of September 2023.


_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE